SCHOOLER v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. March 10, 1903.)

1. VERDICT—WEIGHT OF EVIDENCE—APPEAL—REVIEW.
    Where the question as to whether or not the verdict is contrary to the evidence, or against the weight of evidence, is presented on appeal, the law imposes on the Appellate Division the duty of passing on that question, precisely the same as any other.

2. RAILROADS—STREET CROSSING—COLLISION—EVIDENCE—VERDICT.
    Evidence in an action for damages from collision with a railroad train at a street crossing examined, and *held*, that the verdict for plaintiff was against the weight of evidence.
    Spring, J., dissenting.

Appeal from Trial Term, Monroe county.

Action by Rosie Schooler, as administratrix, against the New York Central & Hudson River Railroad Company. From an order denying a motion for new trial after verdict for the plaintiff, defendant appeals. Reversed.

The action was commenced on the 20th day of August, 1901, to recover damages for the death of plaintiff's intestate, alleged to have been caused through the negligence of the defendant. The action was tried before the court and a jury, and resulted in a verdict in favor of the plaintiff for $3,700. From an order denying defendant's motion for a new trial, made upon all the grounds specified in section 999 of the Code of Civil Procedure, this appeal is taken.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Edward Harris, for appellant.
James Breck Perkins, for respondent.

McLENNAN, J. The evidence on behalf of the plaintiff was of a character to make the negligence of the defendant and the intes-

tate's freedom from contributory negligence questions of fact.  Upon this appeal we need only consider whether or not the verdict of the jury was contrary to evidence and against the weight of evidence. The law imposes upon the Appellate Division the duty of passing upon and deciding that question, precisely the same as any other presented by appeal.  The decision of the trial court, who had the advantage of seeing and hearing the witnesses, is entitled to weight, and should be given due consideration by the appellate court; but it should not for that reason abdicate its powers and refuse to review such decision with the same freedom that it would any other ruling.  Neither court can properly delegate to the other the performance of the duty imposed by law upon it, to wit, to consider and decide, whenever the question is presented, whether or not a verdict rendered by a jury is contrary to and against the weight of evidence.  In the first instance, the duty rests wholly with the trial court, and should be performed fearlessly, in such manner as will promote the ends of justice as intended by the statute, and not with a view of shifting the responsibility to the appellate tribunal.  When decided, the defeated 'party has a right to have the question reviewed upon appeal, and is entitled to a reversal if error was committed; and the fact that the court below exercised its power and discretion in the premises should not alone be regarded by the Appellate Division as a sufficient reason for an affirmance.

The facts in this case, so far as important to consider to enable us to determine whether or not the verdict of the jury is contrary to and against the weight of evidence, may be briefly stated.  The defendant's railroad in the city of Rochester, at the place in question, consists of a single track extending north and south, and is crossed at right angles by Clifford street.  The track is straight for a distance of 800 feet south of the track, from which point it curves sharply to the west to Brincker Street Station, located about 1,200 feet from the crossing.  East of the railroad the southerly side of Clifford street is occupied by dwellings, about which are trees and shrubs which render it very difficult for a person on the street, approaching the railroad from the east, to see a train approaching the crossing from the south until within a few feet of the track.  The first dwelling house east of the railroad is located only 11 feet from the easterly rail, and, while at certain points between the dwellings an approaching train may be seen, the situation is such as to practically hide it from the view of a traveler approaching the crossing from the east. Between 9 and 10 o'clock on the morning of March 20, 1901, a bright, clear day, there being no wind or storm, plaintiff's intestate, who was 35 years of age, was driving a perfectly gentle horse, drawing a covered peddler's wagon, westerly along Clifford street toward the railroad.  He was sitting on the front seat, in such position that the cover of the wagon did not interfere with his view, either to the south or to the north.  He was driving at a slow trot, and, so far as appears, he neither looked nor listened, nor made any attempt to ascertain for himself whether a train was approaching the crossing from either direction; but, without slacking the pace of his horse, he drove directly into a train of the defendant which was crossing

Clifford street, and which had come from the south beyond the Brincker Street Station. The deceased drove the horse against the engine, striking it back of the pilot, and in the collision sustained injuries from which he subsequently died. He was entirely familiar with the crossing and the operation of defendant's trains at that place; had for years driven the same horse and wagon frequently over the crossing in question.

It conclusively appears that the bell of the engine was rung continuously as it approached Clifford street, and that the train was not being run at an improper rate of speed. In fact, the learned trial court charged the jury—and no other inference could properly be drawn from the evidence—that the defendant was not guilty of negligence so far as the management of the train in question was concerned. Every witness called who saw the accident, and who was in the vicinity of Clifford street, testified that he heard the noise of the train distinctly as it approached the crossing. It is claimed, however, that the defendant is chargeable with negligence because of the conduct of the flagman stationed at the crossing, and also that, because of such conduct, plaintiff's intestate is relieved from the charge of contributory negligence. As the train approached the crossing, the flagman came from his shanty, located immediately west of the railroad and south of Clifford street, and with his flag in his hand walked to the middle of the street and stood between the tracks and commenced waving his flag. Whether the deceased saw the flagman or the flag does not appear. At all events he did nothing, did not slacken the pace of his horse, continued driving at a slow trot, and ran into the engine, striking it just back of the pilot. Of course, if the foregoing were all the facts, the plaintiff would not be entitled to recover as matter of law. Three witnesses, however, called by the plaintiff, gave evidence which tends to prove that defendant's flagman waved his flag in such manner as to constitute an invitation to the deceased to cross the track in advance of the approaching train. Whether or not the deceased saw the alleged motion of the flagman, and interpreted it as an invitation for him to cross, does not appear, although it is urged that such is the fair inference to be drawn from the circumstances, in case such invitation was in fact given. When the evidence of these three witnesses is scrutinized, their opportunity for observing the conduct of the flagman noted, and their reasons for concluding that it was an invitation to the deceased to cross, it can hardly be said to amount to more than a scintilla of evidence tending to establish negligence on the part of the defendant. Taken together, it amounts to but little more than to say that the flagman, who was standing on the crossing, where he belonged, waved his flag from east to west across the track, rather than from north to south parallel with the track. We think, however, slight as the evidence was, it was sufficient to raise a question of fact for the determination of the jury.

As opposed to the plaintiff's evidence the flagman testified that when in the shanty he saw and heard the approaching train, that he went onto the crossing, that he saw the deceased approaching, and that he did everything he could, both with his flag and by his voice,

to prevent the deceased from proceeding onto the track. He said, in substance, that he moved his flag in every direction to attract the attention of the deceased, and to keep him from coming upon the track. The flagman is corroborated definitely and positively by at least five disinterested witnesses, who saw the accident and describe in detail the efforts which the flagman made to prevent the deceased from coming in collision with the approaching train. The evidence of these witnesses, when taken in connection with all the circumstances, the fact that the flagman was at his post of duty presumably to prevent a traveler upon the highway from coming in collision with an approaching train, the fact that the rig of the deceased was not struck by the engine, but that it struck the engine back of the pilot, leads us to the conclusion that the version of the flagman, and of the other witnesses called by the defendant, as to how the accident occurred, is correct, and that the evidence of the defendant so greatly preponderates over that of the plaintiff upon this issue that the verdict of the jury should be set aside as contrary to evidence and as against the weight of evidence. It would not be useful to make a detailed statement of the testimony of each witness bearing upon this question.

A careful examination of all the evidence and of the facts surrounding this unfortunate accident leads us to conclude that it is our duty to hold that the verdict of the jury is contrary to and against the weight of evidence, and that for that reason the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event.

Order reversed, and motion for new trial granted, with costs to the appellant to abide event. All concur, except SPRING, J., who dissents.